# OHIO APPELLATE AND CIRCUIT COURT REPORTS.

## NEW SERIES—VOLUME XXIII.

CAUSES ARGUED AND DETERMINED IN THE COURTS OF
APPEAL AND THE CIRCUIT COURTS
OF OHIO.

---

### INCOMPETENT RECITAL OF A STOCK LEDGER.

Court of Appeals for Hamilton County.

JOHN N. RUSSELL, ADMINISTRATOR OF THE ESTATE OF J. N.
RUSSELL, DECEASED, v. THE FOURTH NATIONAL BANK OF
CINCINNATI.*

Decided, May 28, 1915.

*Corporations—Transfer of Stock Without Surrender of the Old Cer-
tificates—Recital of Stock Ledger as to Transfer. Incompetent as
Against the Administrator of the Holder of the Original Certificate
—Plausible Presumptions as to What Occurred of no Weight
Against the Uncanceled Certificate.*

Stock was transferred fifty years ago by the defendant bank to one of
its officers without surrender of the old certificate. The original
holder received no further dividends on the stock and ultimately
died in poverty. The old certificate was found among decedent's
papers, and an action was brought by his administrator for a trans-
fer of the stock to him on the books of the bank. A by-law of the
bank required a surrender of an old certificate as a condition of
the issuance of a new one, and the same requirement appeared on
the face of the certificate. At the trial below an entry from the
stock ledger of the bank was admitted over objection, which pur-
ported to show a transfer of the number of shares in question from
the decedent to the said officer of the bank.

---

*Reversing *Russell, Admr.,* v. *Fourth National Bank,* 15 N.P.(N.S.), 184.

*Held:* That the recital in the stock ledger is a self-serving declaration by an interested party, of great advantage to the said party and of corresponding disadvantage to the representative of the decedent, and its admission was prejudicial error for which the judgment rendered below in favor of the bank must be reversed, notwithstanding the plausible presumptions arising from the conduct of the parties, the unexplained laches of the decedent and the further defense of a bar to the action by the lapse of time.

*Tuttle & Ross,* for plaintiff in error.
*Charles B. Wilby,* contra.

GRANT, J.; MEALS, J., and CARPENTER, J (sitting in place of Judges Jones, Swing and Jones), concur.

This is a proceeding in error, the petition in which asks for the reversal of the judgment of the Superior Court of Cincinnati.

The facts which we regard as material in this cause, and which are essential to its determination here, are these: The plaintiff is the administrator named in the title. The defendant is a banking corporation.

In 1865 the plaintiff's intestate became the owner of thirty shares of the capital stock of the defendant corporation, his ownership being evidenced by certificate No. 123, of due form and signature.

That certificate bore upon its face a provision that it could be transferred on the books of the corporation only upon the surrender of itself, properly endorsed. At the time this certificate was issued there was in force a by-law or regulation of the corporation bank to the same effect as to the condition of transfer only upon surrender appearing on the face of the certificate.

The plaintiff's intestate was paid the dividends to which his stock was entitled for two years after he became the owner of it, or thereabout, but no more, although dividends thereafter were earned to the corporation in which the stock represented by the certificate named was entitled to share and be paid. It is not shown that the intestate had notice of the declaration of such subsequent dividends. After his death the certificate in question was found among his papers and came to the hands of the plaintiff as evidence of, and representing assets of the estate, to be administered by him, if it has value as such. Demand

was made by the plaintiff of the defendant corporation for a transfer to him upon its books of the certificate referred to, and for an accounting to him for the dividends earned on the stock represented by it, but not paid, which demand was refused.

The prayer of the petition was that the defendant be required to make the transfer requested and account for the unpaid dividends.

The answer of the defendant denied generally, and then alleged a sale of the stock in 1867 to one Colburn, accounting for the non-surrender of the certificate—which is not questioned—by an averment that it was at the time lost.

In a separate defense laches on the part of the plaintiff's intestate in asserting any claimed right to the stock or its earnings was pleaded, as were also in other defenses several statutes of limitation in bar of the action. There was a cross-petition which asked that the plaintiff be compelled to surrender for cancellation the certificate in his possession and be prohibited from disposing of it in the meantime.

The reply denied the affirmative matter of the answer,

The trial below was to the court. The issues were found to be with the defendant, and there was judgment accordingly, dismissing the petition, ordering the surrender of the certificate for cancellation, and against the plaintiff for the costs of suit.

To reverse this judgment error is prosecuted here.

In the view we take of the record before us in this cause, our determination of it may proceed over a much narrower field than that traversed in the briefs and the arguments at the bar.

The plaintiff produced in evidence the original certificate, wholly unindorsed and unassigned by his intestate.

It did not appear by any evidence that the intestate had notice or knowledge of any dividend being declared subsequent to those which he took.

It appeared that the stock book of the bank covering the period during which the plaintiff's intestate took dividends and later, that is to say, the book from which his certificate presumably was detached from its correlative stub, and to which regularly it should have been restored when surrendered for transfer, was long ago lost. At all events it could not be pro-

duced and was not forthcoming at the trial. If it had been it could not have shown the certificate as surrendered, for that was in the possession of the plaintiff. Consequently, it could not have shown a compliance with the inseparable condition of an effectual transfer through surrender, in accordance with the provision of the certificate itself and of the defendant's own by-law. This inability to produce can not be traced to the intestate and is not to be imputed to him or his representative, the plaintiff, as a default in exoneration or excuse of the defendant's otherwise liability.

The defendant offered in evidence—and it was admitted, over the objection of the plaintiff—an entry on one of its books—called, perhaps, the stock ledger (the name is not material)—purporting to show, as of January 9th, 1867, a charge to the intestate of thirty shares of the bank's stock, and a corresponding credit, as of the same date, of a like number of shares to one W. F. Colburn, the account in the book produced being marked, "J. N. Russell." Colburn, it is said, was at the time a vice-president of the defendant bank. He was dead at the time of the trial, and no witness undertook to say who made these entries in the stock ledger, or under what circumstances, or by whose or what authority they were made. Nothing appears that tends to connect the intestate with them, by act, assent, acquiescence, sufferance or knowledge. The inference from his position is deducible that Colburn had the opportunity to make them, or cause them to be made. No explanation is forthcoming as to why the entries were made in the absence of a surrender of the certificate—the act of making them without the surrender doing violence both to the requirement of the certificate itself and failing to meet the like condition of the defendant's self-adopted by-law. The averment of the answer to the effect that the certificate was then lost, that is, lost as far as Russell was concerned, was not made good by any evidence, the conclusion that it must have been lost because of his subsequent dire poverty resting in conjecture only.

From these observations it becomes apparent, we think, that the foundation upon which the judgment attacked by this petition rests, and the reasoning upon which the finding preceding it must have proceeded, was this entry upon the stock ledger.

the admission of which in evidence is assigned as a principal error. If the contention is right and the foundation is swept away, the entire superstructure of the defense falls.

It is difficult to see upon what reasonable hypothesis, upon what rational footing of legal principle, this fundamental piece of alleged evidence was received and allowed to mould and coerce to effect the judgment complained of.

It is but a statement of an interested party, of advantage to the same party, and to the decisive disadvantage of the representative of the other party, but who was no party to the transaction which it purports to narrate. And this *ex parte* statement is now judicially forced into the service of the only one who made or agreed to it, so far as appears. Otherwise spoken, it is but the self-serving declaration of an interested party, allowed to be used to the detriment of one in no way responsible for, or acquiescent in it, so far as the record shows. And not only so, but a party to the transaction is thus through a paper permitted to speak to a fact very much to the detriment of the man whose estate is adversely to be affected by it, while the mouth of that other man is closed in death—thus defeating one benign safeguard which the law puts up for dead persons, that of setting each upon an equality with the other in that respect.

The fact, the mere accident, that the statement appears in writing and on the books of the concern, does not make it any the less a statement, or raise it to any force or dignity above a statement, as seems to be mistakenly supposed in some quarters. Reducing it then to its proper level of a statement and no more, and annexing to it its self-appearing quality of self servingness, and its incompetency to conclude one not served by it and a stranger to it, for aught that is shown, becomes clear, as we think. The admission of it, under ordinary circumstances, would seem to be at variance with two well settled principles of the law of evidence. It is the self-serving declaration of a party. It is allowed to speak against one who can not speak for himself; it is permitted to weigh—conclusively, in this case—against what might be the decisively opposing word of a dead man, were he alive again and could he speak.

The fact that the paper admitted is the book of a bank—national or other—is wholly beside the question. Banks are not

sacrosanct, so that letters of marque must be granted to them by the courts in matters affecting the competency of testimony, and the paper has no greater or other probative effect than any statement, of farmer Smith, for example, to the effect that he owns farmer Brown's horse, which, however, still remains in the latter's pasture, with no bill of sale or other evidence of a change of title outstanding.

On the score of principle and the manifest reason of the thing, we are quite unable to agree that this, the only tangible defense to overcome and control the effect of the visible certificate produced, is itself defensible.

As was to have been expected in what we feel bound to regard as so plain a case, authorities are not wanting to support this conclusion of our own.

Many of these, more or less in point, are marshalled and discussed in the briefs of counsel, with commendable industry and ability. We shall not comment upon them more particularly or *seriatim*, for the reason that we find what they amount to, to our apprehension, summed up in a compact text-book statement to be cited presently.

It certainly is true that under some circumstances and for some purposes, the regular and orderly writings of a corporation may be used in evidence. But they are so competent, it is believed, only as affecting the corporation in its capacity as a body, as a corporate entity; in other words, only *qua* corporation. They are so competent only in their relations to the internal affairs of the organized body. This limitation, or distinction will appear in the quotation about to be made. It is stated here only to show that it has not been overlooked and that the case at bar does not come within its purview, or the allowed exception to the general rule to the contrary, as is believed.

In *Commentaries on the Law of Evidence*, sometimes known as the "Blue Book of Evidence," by Mr. Jones, Vol. III, Section 516a, the law appertaining to this question, as we understand it to be, is tersely, but rather informingly stated, as applied to the matter in hand, as follows:

"Thompson, in his monumental work on corporations, clearly announces his conclusions. He says: 'The general rule is believed to be that, except for the purpose of proving what the

corporation did, or what action its corporators took in effecting
its organization, its books and records are not evidence as against
a stranger, or as against a stockholder holding adversely to it.
*   *   *   But where it is sought to use the records of a private
corporation, as evidence of the facts which they recite, for the
purpose of concluding, or even influencing the rights of third
parties who are strangers to the record, then such records are
not admissible, on the same principle which operates to exclude
the records of legal judgments when offered for a similar pur-
pose, on the principle that they are *res inter alios acta,* or in
plainer language, upon the principle that the rights of A can
not be concluded or displaced by the facts that C, D, E and F
met together in conclave, in the room of a board of directors
of a private corporation, and there adopted a certain resolution,
or passed a certain vote, or enacted a certain by-law intended
to have that effect.  The sound rule, then, is that the records
of a private corporation can not be used in evidence for the
purpose of sustaining a claim of the corporation against persons
who are not members of it, or to defeat a claim of such a person
against the corporation, or to affect strangers anyway.  *   *   *
As between members of the corporation, they are evidence of
corporation acts therein recorded; but they can not be used in
an action against a stranger to connect him with the corporation,
unless made so by an act of the Legislature.  Nor can they be
used in evidence in suits by the corporation against its members,
for the purpose of proving, on behalf of the corporation, entries
which are in its interest.  If the contrary were the rule, a cor-
poration might manufacture evidence in its own favor, and
those who were its guilty agents in so doing would not be sub-
ject to the penalties of perjury.  Nor are such books evidence
to prove private agreements of the stockholders.  Upon the same
basis of reasoning, the records of a corporation are not evidence
of the truth of the facts therein recited, as between a member
of the corporation, and a stranger, or between two strangers.'
Wharton says that even in suits by a corporation against its
members its books can not be used as evidence in proving in
behalf of the corporation self-serving entries.  'Entries in the
books of a corporation of private pecuniary transactions with a
stockholder are not admissible against him, especially when it
does not appear by whom the entries were made.' "

Cognate following sections may also be read with advantage,
but we shall not take the space to quote them.  In one of these
(517) it is said: "It has frequently been declared that the
books can not in general be adduced by the corporation in sup-

port of its own claims, *against a stranger,* or to affect strangers in any way;" citing in support, *Commonwealth* v. *Woelper,* 3 Serg. and R., 29; *Greenleaf, Ev.,* Section 493; *Wharton, Ev.,* Section 628. It is to be said that in the transaction now under review the plaintiff is—as his testator was—a stranger-in-law to the bank. Being a stockholder did not make him less so.

The authorities cited to sustain the text do so abundantly, as we think, and this is said only after an attentive examination of many of them. And this is an added reason for a perhaps scant discussion here of those brought forward in the briefs.

Thus viewing the question, and finding the law so to be, it follows, manifestly, as we must think, that the admission of the entry purporting to recite that the testator parted with his stock holdings in the defendant was error. And as it went to the heart of the controversy and was the only thing that could have resolved the issue adversely to the plaintiff, it was of course prejudicial error and, therefore, reversible error.

As to the other considerations more or less vehemently urged upon us in the argument at the bar, we do not feel called upon to say very much, since obviously and as already intimated the paper which we have found should have been excluded but was admitted, formed the keystone of the entire arch of defense against the certificate in the hands of the plaintiff.

It is said—plausibly enough, to be sure—that it is impossible to think that the dead man should have lived in abject and miserable poverty and yet have been, by the ownership of this certificate, potentially a rich man. Perhaps so. But it will not do to push this supposed impossibility too far. It is a trick that misers have to appear to live poor while they are getting ready to die rich. At most, the consideration is but a conjecture, and when a conjecture comes against a very matter-of-fact stock certificate, the presence of which in wrongful hands—if it is wrongful—is solely due to the neglect of the sworn duty of the now conjecturer and to its own disobedience of its own laws— in such case, we say, the conjecture is at a disadvantage and must go to the wall. It is, we suspect, small consolation that the patient dies according to the books—that is, in consequence of an infirmity which when it was acquired the sufferer had it within its easy power to prevent—namely, by requiring a surrender of

the certificate before transferring the stock to any one, bank officer or no bank officer.

So also in regard to the statement in argument that the bank must have taken, and doubtless *did* take, an indemnity, before transferring Russell's stock. Again, perhaps so.

But these are all inferences, suppositions, guesses. One guess is as good as another, and no guess can push the law of evidence from its stool. The hard fact of an unsurrendered certificate of stock is a visible and workable thing, to the confusion of any number of might-have-beens, or even must-have-beens.

In regard to the other defenses alleged in the answer—those of laches and the barring of the action by limitation or lapse of time—we desire to say no more than that none of them seems to us to be of merit to control the conclusion otherwise reached here. They are denied.

Because of the error found the judgment complained of is without support in law and for that reason is reversed, and the cause is remanded to the court from whence it came, for such further proceedings there as may be proper.

---

## JURISDICTION TO ENJOIN EXECUTION ON A JUDGMENT.

Court of Appeals for Licking County.