Marguerite Fitch, the appellee, was on January 12th, 1925, a passenger on a train operated by the appellant, which left Annapolis for Baltimore at 7.20 A.M. When the train reached its Baltimore terminal, Miss Fitch, in attempting to leave the car in which she had been riding, slipped on the steps leading to the station platform, fell, and was injured. She attributed the accident to the icy, slippery *Page 139 
condition of the car steps, and asserted that her injuries were directly caused by the negligence of the appellant in allowing the steps to be in that condition, and called upon it to compensate her for them, and upon its refusal to do so, she brought this suit. The case was in due course tried before the court and a jury, and the verdict and judgment being for the plaintiff, the defendant appealed.
At the close of the testimony in the case the plaintiff offered three prayers, of which the court granted the second and third, and the defendant seven, of which the court granted the third, fourth and sixth, and refused all the other prayers of both plaintiff and defendant, and overruled special exceptions filed by the defendant to the plaintiff's second prayer; and those rulings are the subject of the first and only exception presented by the appeal. The real question in the case is raised by the appellant's two and a half and fifth prayers, which were refused, and by which appellant sought to have the court instruct the jury that there was in the case no evidence legally sufficient to show that plaintiff's injuries were due to defendant's negligence; and in dealing with those prayers it becomes necessary to review the evidence relating to that question.
The specific negligence charged is that appellant failed to use that degree of care which as a common carrier of passengers for hire it was bound to use in keeping the steps, which appellee was obliged to use in leaving its car, in a safe condition, but that in default of that duty it permitted snow and ice to accumulate thereon so as to render them unsafe, in consequence whereof the plaintiff was injured. The evidence material to that question is in substance this:
Miss Fitch testified that when she attempted to leave the car at Baltimore the steps were "slippery," but she did not testify to their condition when she entered it at Annapolis. She said that there was no falling weather that day so far as she recalled, but that it had snowed the day before, and was cold.
Edwin Engelke, who also boarded the train at Annapolis, *Page 140 
testified that when Miss Fitch attempted to leave the car at Baltimore, there was ice and snow on the steps which she was required to use in leaving the car. He further said that there was no "falling weather," but that there had been snow a couple of days before, and that it was very slippery.
Miss Helena Hyde, who was also a passenger on the same train, testified that when it reached Baltimore she saw ice on the steps which she used to leave it, and she too said that there was no falling weather at the time. This was all the testimony offered for the plaintiff in connection with the question before us, and it may be noted that no one of these witnesses attempted to describe the condition of the car steps when it left Annapolis.
For the defendant, John T. Basil, conductor on the car in which plaintiff was a passenger, testified that before it left Annapolis the steps were cleaned off, and that it was a good job, but that at that time it was "drizzling and freezing."
John L. Colbourne, the motorman who operated the car, said that the weather was a "drizzle rain and freezing"; that between Annapolis and Academy Junction passengers entered on both the right and left side, and from that point to Annapolis they entered on the right side exclusively; that there was snow and slush on the ground, and that passengers "tracked" the snow in the cars; that before it left Annapolis the ice and snow was cleaned from the steps and sand thrown on them, that the train was made up of a front motor car and a trailer, and that there were fifty or fifty-five passengers on the front motor car on that trip, and thirty-five or forty on the trailer; that at times when the ice is "very bad," it is sometimes cut off before the passengers leave the train at the terminals.
John Urban testified that it was he who cleaned off the steps of the car before it started on its trip from Annapolis to Baltimore, that he cleaned two sets of steps on each side of it, that before he "put the car out on the road he shoveled *Page 141 
off the steps, took the ice scraper and scraped off all ice accumulated under the snow," and that after he "got that off" he put on rock sand and salt to cut that ice.
Reduced to its lowest terms, this evidence supporting plaintiff's claim tends to show these facts: that when appellant's car, in which the appellee was riding at the time she was injured, left Annapolis, there was snow on the ground, that the weather was cold, but that it was not raining or snowing, that before being sent out from the Annapolis terminal all steps used to enter or leave it were cleaned of ice and snow, that between Annapolis and Baltimore it stopped at various stations, and that persons entering at such stations "tracked" snow in the car, and that when it reached Baltimore ice and snow had accumulated on the steps and they were slippery, and as a consequence of that condition that the appellee, using them to leave the car at the Baltimore terminal, slipped, fell and was injured, and that when under such conditions the steps become very slippery and unsafe, the company at times cuts off the ice and snow from the steps before the passengers are discharged at the terminals, but that it did not do so on the occasion in question.
Appellant contends that these facts are not sufficient in law to permit the inference that appellee's injuries were occasioned by any negligence on its part, and that therefore its fifth and two and one-half prayers should have been granted. But in view of the decision in Hanway v. Balto. O.R. Co., 126 Md. 535, we cannot accept that conclusion. It is unquestionably the general rule, supported at least by the weight of authority, that to require a railroad, operating its trains through a storm, to keep its platforms and approaches to its cars free at all times from ice and snow, would impose upon it an unreasonable and impracticable burden, which would seriously interfere with the adequate and efficient discharge of its duties as a common carrier, and the force and justice of that rule have been recognized in this state. Hanway v. Balto. O.R. Co., supra;Trader v. Balto. C. A.R. Co., *Page 142 106 Md. 635. But while that is true, it is also true that where the carrier has a reasonable opportunity to discover and correct unsafe conditions caused by the deposit of ice and snow on the steps, platforms, and other approaches to its cars, and fails to do so, it is negligent. Hanway v. Balto. O.R. Co., supra.
These general principles appear to be conceded, but the dispute between the parties is in their application to the facts of this case, and that question turns mainly upon the legal effect of the testimony of appellant's witnesses that when the train left Annapolis the steps were clean and safe. Appellant assumes that because no witness contradicted that evidence that it is undisputed and must be taken as true. But whatever may be the merit of that contention, and it is not without force, we cannot accept it in this case without overruling Hanway v. Balto. O.R. Co., supra, which we are not prepared to do, for the two cases cannot on their respective facts be distinguished. In that case as in this the testimony was uncontradicted that when the car left its terminal station the steps were clean, but that when it arrived some twenty-seven minutes later at Sewell station the steps were covered with clear ice, and in that case, as according to the plaintiff's witnesses in this, there was no falling weather, but the ground was covered with snow from a previous storm. And yet the Court, in considering the effect of that uncontradicted evidence, said: "It is true, the conductor and the brakeman stated that the steps were clean when the train started from Aiken, although they did not clean them off, and that it was the duty of the man named Scotty to clean them. But the weight of that evidence, and the reasonableness of the theory of the defendant that the ice on the steps might have been carried there by passengers, who entered the train at other stations, was a matter entirely for the jury. We are not to be understood as holding that the fact that there was ice on the step at the time of the alleged injury would, standing alone, justify a presumption of negligence on the part of the railroad company. All we determine in this case is that there *Page 143 
was some evidence from which the jury might have found that the ice was on the step when the train left Aiken, and that if that was so, and the ice rendered the steps unsafe, then there was evidence of negligence of the defendant."
It is true, as suggested by the appellant, that in that case the employee who actually cleaned the steps did not testify, while in this case he did, and that in that case there was no testimony that the steps had been cleaned before the car left its terminal, while in this case there is such testimony. Nor was there any direct testimony in that case to show that the ice on the steps had been carried there by passengers' feet, while in this case, it says, the "positive and uncontradicted" evidence is that the steps were cleaned before the car left Annapolis, and that the snow and ice found on them when it arrived in Baltimore was "due to the tracking of snow" by the passengers who entered the car at way stations between Annapolis and Baltimore. But the effect of the testimony in both cases is much the same. For while in the Hanway case the employee who cleaned the steps did not testify, the conductor and brakeman on the train did, and they said that they had inspected the steps and that they were clean when the train left Aiken. If they were clean, there was obviously no occasion to clean them again, and hence there is no difference in principle between the statement of the conductor and the brakeman in that case that the steps were clean when the car left its terminus, and the testimony of the cleaner in this that he had cleaned the steps before the car left its terminus. Nor can we agree with the appellant's statement that the evidence in this case is clear and uncontradicted that the snow and ice found on the steps of the car when it arrived in Baltimore was "due to the tracking of snow by the passengers."
The only person who testified that any passengers boarded the train between Annapolis and Baltimore was the motorman, and his testimony as to that was not entirely clear. He said that the train was a very "heavy local" and made quite a few stops to let passengers "off and on," but gave no definite information as to the number who entered the car at way *Page 144 
stations, or whether they were many or few, and while he said that passengers entering the car kicked the snow from their feet against the steps, that it accumulated there, and that it had been "raining and freezing and that made it hard," other witnesses said that it was not raining or snowing at that time. Nor is it certain whether he observed that before the train left Annapolis, or between Annapolis and Baltimore, because the conductor testified that the steps were not cleaned in Annapolis until all the passengers at the West Street station had boarded the car. Nor is the testimony of the employee who cleaned the steps wholly free from ambiguity. His statement that, after he got off "all" the ice accumulated under the snow, he put on "sand and rock salt to cut that ice," certainly may carry the implication that he left ice on the steps which the sand and rock salt was to cut. Moreover, in the Hanway case the Court considered that the ice found on the steps in that case might have been brought there by passengers entering the car at way stations, under conditions almost identical with those in this case, but it held that whether it was so accumulated, or whether it was on the steps when the car left its terminal, was a question for the jury. The cases of Palmer v. Penna Co.,111 N.Y. 488; Riley v. R.I. Co., 29 R.I. 143, cited by the appellant, cannot be considered in point, for in those cases the court assumed the very fact which is in dispute here, to wit, that the snow and ice accumulated while the car was en route. In view of the conclusion we have reached, it is unnecessary to decide whether negligence could have been inferred from the failure of the defendant to remove the snow and ice from the steps after the car had arrived at its terminus, before permitting the passengers to use them. The motorman testified that that was done at times, when the conditions were "very bad."
Without further elaboration, it is apparent from what has been said that in our opinion, upon the authority of Hanway v. Balto. O.R. Co., supra, that the two and a half and fifth prayers of the defendant were properly refused.
The defendant's first and three and a half prayers are *Page 145 
apparently based upon the theory that the plaintiff failed to prove that she actually slipped on the ice and snow on the steps of the car, and, if that fact depended upon the testimony of her witnesses, there can be no doubt of the soundness of that theory, for they failed to show that she was on the steps at all when the accident occurred. But that defect was cured by the testimony of the conductor and motorman, which tended to show that she slipped and fell as she was coming down the steps, and that, taken together with other evidence tending to show that the ice and snow on the steps made them slippery and unsafe, was sufficient to take the case to the jury. Hanway v. Balto. O.R. Co.,supra. And we find no error in the refusal of these prayers. Nor can it be said as a matter of law that the plaintiff was guilty of contributory negligence. She was not obliged to remain in the car indefinitely, and she was using the avenue of egress provided for her by the defendant, according to her testimony, in a reasonably careful and prudent manner.
What has been said in reference to the defendant's prayers also disposes of its special exceptions to the plaintiff's granted prayers, and as those prayers appear to be unobjectionable in other respects, we find no error in the rulings as to them.
Finding no errors in the rulings involved in the exceptions presented by the record, the judgment appealed from will be affirmed.
Judgment affirmed, with costs. *Page 146