RICKABAUGH, APPELLANT, *v.* YOUNGSTOWN MUNICIPAL
RY. CO., APPELLEE.

(Decided October 31, 1936.)

*Mr. Elmer T. Phillips,* and *Mr. Herbert L. Kerr,* for appellant.

*Messrs. Harrington, Huxley & Smith,* for appellee.

NICHOLS, J. Goldie Rickabaugh, in her action against the Youngstown Municipal Railway Company, sought to recover damages for personal injuries. The cause comes into this court upon appeal on questions of law to reverse the judgment of the Common Pleas Court of Mahoning county, the verdict of the jury having been for the defendant. The parties will be referred to herein as plaintiff and defendant.

The plaintiff on the 13th day of February, 1934, boarded one of defendant's street cars as a passenger at the corner of Silliman and Steel streets in the city of Youngstown. She rode on the street car to the point of her destination at the intersection of Federal and Hazel streets in the business district of Youngstown, where the car came to a stop and she alighted therefrom for the purpose of going to her employment at the McKelvey Company Department Store. It is the claim of plaintiff that the step of the street car at that time and place was covered with a heavy coating of dirty, rough and old ice overlaid with snow, and when she stepped upon this step she slipped and fell to the ground sustaining serious personal injuries set forth and described in her third amended petition, and which injuries are claimed to have resulted from the negligence of the defendant in permitting the snow and ice to accumulate and remain upon the steps of its street car.

The defendant denied any negligence upon its part and contended that the plaintiff was injured by reason of her own negligence in falling upon the street after alighting from the street car, the streets of the city being covered with ice. Defendant further claimed that the step was free and clear of both snow

and ice, and that shortly before the accident the car had, been thoroughly cleaned and inspected. The plaintiff at the time wore no overshoes but just the regular high-heeled shoes of about two and three-fourths inches. For several days preceding the accident the weather in Youngstown had been very cold and the streets generally were covered with a glare of ice. It is not denied that plaintiff did fall and receive certain injuries, the controversy in this case being upon the question whether ice and snow had actually accumulated and been allowed to remain on the step of the street car, causing plaintiff to slip, or whether plaintiff fell upon the street after she had alighted from the street car, due to the fact that she had not properly equipped herself for travel upon the street, considering the known icy condition thereof. The record contains approximately five hundred pages of testimony given by the several witnesses in the case, and the trial resulted, as hereinabove stated, in the jury returning a verdict for the defendant.

The defendant admitted its corporate existence and that the plaintiff was a paid passenger upon the street car then operated by it.

The following errors are assigned by plaintiff (appellant) for which it is contended that the judgment of the trial court should be reversed and the cause remanded for a new trial, to wit:

"First: Admission of incompetent evidence offered by defendant.

"A. Testimony of Dutton and Reed as to inspection reports of street car company.

"B. Miss Nelson's testimony founded on hearsay as to memorandum made at G. M. McKelvey Company.

"C. Mr. Anderson's testimony founded on hearsay records of the Strouss-Hirshberg Company.

"Second: Error in court's charge to the jury.

"A. Erroneous definition of 'Highest Degree of Care.'

"B. Inconsistent charges on duty and degree of care required of defendant carrier.

"C. Improper charge on contributory negligence.

"D. Failure to charge after requested so to do by plaintiff upon subject of notice, defendant carrier's duty to remove ice and snow collected on street car steps, defendant carrier's duty to anticipate the accumulation of ice and snow.

"E. Improper emphasis placed upon credibility of witnesses after excluding competent evidence relative to credibility and after improper conduct of defendant's counsel during argument.

"F. Improperly placing and defining burden of proof.

"G. Improper charge upon the subject of damages.

"Third: Exclusion of evidence and argument.

"A. Testimony of Doctor Pettigrew elicited by defendant on cross-examination."

As a part of its defense to the claim of plaintiff that the company had not inspected its street car, the defendant, by two witnesses, Dutton and Reed, identified its exhibits 1, 2 and 3 which were permitted to go to the jury over the objection and exception of the plaintiff; the purpose of these exhibits being to prove that the step in question was free of ice and snow. These witnesses testified that they had no independent recollection of the matters recorded upon these exhibits and that the information thereon was obtained from others and recorded by the witnesses. Mr. Dutton testified that defendant's exhibit 1 "is one of the papers I have to fill out; a report of what I do on the street car and the ones we take care of in the night. * * * Every car that comes in that we put out the next morning we get out and inspect that car, we get it and look at the brakes and also we sweep the car,

look at the sand and sand the car. The man that sweeps the cars, he gets it and sweeps all the cars."

Defendant's exhibit one is one of the original records made at the barns by the witness as car foreman. Over the objection and exception of the plaintiff, the witness was permitted to read this report which showed that car number 908 (the car upon which plaintiff was a passenger) was inspected, and the only defect found on the night of the 12th day of February, 1934, was "one lamp out."

On cross-examination the witness admitted that he could not say positively that he inspected the steps on car number 908 after it came in the barns at midnight and before it left on the morning of the 13th, and that the information which he put upon the report designated "defendant's exhibit 1" came to him from one of the men who swept the car. The witness admitted that certain things stated on the report were not correct, as evidenced by the following questions:

"Q. Where it says 'cars in at 7 a. m.,' that's not correct? A. No.

"Q. So the report in that respect is a faulty report? A. Yes."

It is the claim of plaintiff that these reports marked as defendant's exhibits should not have been admitted because they were merly self-serving declarations, not in all respects correct, made solely for the company's own use in the management of its business and that the Supreme Court of Ohio in the case of *Railroad Co.* v. *Cunnington,* 39 Ohio St., 327, and the Court of Appeals for Hamilton county in the case of *Russell, Admr.,* v. *Fourth Natl. Bank of Cincinnati,* 4 Ohio App., 378, have held the admission of such records to constitute prejudicial error.

We quote the second paragraph of the syllabus from the case of *Railroad Co.* v. *Cunnington, supra:*

"2. Books kept by a railroad company solely for

its own use in the management of its business, are not admissible as evidence, when offered by the company, in an action against it by a stranger to such company seeking to recover damages sustained by the company's negligence."

In the opinion, Okey, J., says at page 330:

"There was no error in excluding the register of trains. It was not of a public or *quasi* public character, but made solely for the convenience and use of the corporation in managing its trains, and hence was not admissible *against* a stranger. The witness was not prevented from using it to refresh his memory, nor was his testimony, as to any fact within his knowledge, excluded. His evidence as to the contents of the book stood on no better ground than the book itself. The exclusion of both was proper. *Pittsburgh, etc. R. Co.* v. *Noel*, 77 Ind. 110; *Chase* v. *Railroad Co.*, 38 Ill. 215; Whart. Ev. Secs. 661-663."

From the syllabus in *Russell, Admr.,* v. *Fourth Natl. Bank of Cincinnati, supra,* we quote:

"* * * At the trial below an entry from the stock ledger of the bank was admitted over objection, which purported to show a transfer of the number of shares in question from the decedent to the said officer of the bank. *Held:* That the recital in the stock ledger is a self-serving declaration by an interested party, of great advantage to the said party and of corresponding disadvantage to the representative of the decedent, and its admission was prejudicial error for which the judgment rendered below in favor of the bank must be reversed, notwithstanding the plausible presumptions arising from the conduct of the parties, the unexplained laches of the decedent and the further defense of a bar to the action by the lapse of time."

In the opinion at page 383 the court says:

"The admission of it, under ordinary circumstances, would seem to be at variance with two well-

settled principles of the law of evidence. It is the self-serving declaration of a party.''

The court further quotes from 3 Jones on Evidence, Section 516*a*, as follows:

'' ' ''The general rule is believed to be that, except for the purpose of proving *what the corporation did,* or what action its corporators took in *effecting its organization,* its books and records are not evidence as against a stranger, or as against a stockholder holding adversely to it. * * * But where it is sought to use the records of a private corporation, as evidence of the facts which they recite, for the purpose of *concluding,* or even *influencing* the rights of third parties who are strangers to the record, then such records are not admissible, on the same principle which operates to exclude the records of legal judgments when offered for a similar purpose, on the principle that they are *res inter alios acta,*—or in plainer language, upon the principle that the rights of A can not be concluded or displaced by the facts that C, D, E and F met together in conclave, in the room of a board of directors of a private corporation, and there adopted a certain resolution, or passed a certain vote, or enacted a certain by-law intended to have that effect. * * * Upon the same basis of reasoning, the records of a corporation are not evidence of the truth of the facts therein recited, *as between a member of the corporation, and a stranger, or between two strangers.*'' ' ''

In the case under consideration here we think the court clearly erred in admitting the private records of the defendant as against the plaintiff who was a stranger thereto. The only purpose for which these records could properly be used was to refresh the recollection of the witness. The records having been admitted as defendant's exhibits and having gone to the jury in the jury room constituted prejudicial error.

This is true as to the defendant's exhibits 1, 2 and 3. See: 17 Ohio Jurisprudence, 643, Section 528; 10 Ruling Case Law, 1134.

It is true that upon broad principles a memorandum in writing, made at the time of the transaction by a person legitimately connected therewith, who had personal knowledge of what was written and *could have had no interest in misrepresenting or misstating the facts,* is admissible in evidence though such person is not a party to the suit. This is the theory upon which the "shop-book rule" is founded.

Our attention has been called by counsel for the defendant to the cases of *Moots* v. *State,* 21 Ohio St., 653, and *Shriedley* v. *State,* 23 Ohio St., 130. In the first of these cases the freight book of a railroad company, made in the regular course of business, including an entry of a particular shipment in question, was held properly admissible, but it must be remembered that this freight book was the book of a disinterested person, to wit, the railroad company, and the action in which the book was admitted was not one to which the railroad company was a party, and therefore the objection to the book on the ground that it was a self-serving declaration was not applicable.

In the second of these cases certain "check slips" made in the regular course of business, showing the number of the cars and the descriptive marks of certain goods which had been stolen were held properly admissible in evidence, but here again the slips were those of a person not a party to the action, and the objection that they were self-serving declarations did not apply.

We think these cases are clearly distinguishable from the rule laid down in the case of *Railroad Co.* v. *Cunnington, supra,* and in the case of *Russell, Admr.,* v. *Fourth Natl. Bank of Cincinnati, supra.*

Upon the subject of the error assigned in the ad-

mission of the testimony of Miss Vera Nelson, an employee of the G. M. McKelvey Company, we have examined very carefully the record of Miss Nelson's testimony and find that each objection made on behalf of the plaintiff was sustained by the trial court at the time this testimony was introduced except in two instances. Upon direct examination by counsel for the defendant, Miss Nelson was asked this question:

"Q. Did you make that record, Miss Nelson? A. Yes, sir.

"Q. That is in your handwriting? A. Yes, sir.

"Q. Now then just what is there with respect to changing the name from one name to another on that record, tell the jury. A. The report came to my office she was married to Mr. Jack Rainey, that would change the record in the time office.

"Mr. Phillips: I move the answer be excluded.

"Court: It may remain.

"Mr. Phillips: Exception."

On cross-examination Miss Nelson was asked the following question by counsel for plaintiff:

"Q. And I see on here that her name has been changed back to Goldie Rickabaugh? A. Yes. * * *

"Q. You made that notation on the card because of some information that she was married to this man Rainey? A. Yes, sir.

"Q. And then that is scratched out and Mrs. Goldie Rickabaugh inserted? A. Yes, sir.

After Miss Nelson had testified upon both direct and cross-examination, she was recalled by counsel for plaintiff and asked this question:

"Q. Miss Nelson, do you know of your own knowledge whether or not Mrs. Rickabaugh ever lived with Mr. Rainey? A. No, I couldn't say.

"Mr. Phillips: Now, if the court please, I move the court to withdraw all of this lady's testimony with reference to the change of name from Rickabaugh to

Rainey and that it be stricken from the record on the ground it is hearsay.

"Court: It may remain.

"Mr. Phillips: Exception."

Mrs. Rickabaugh had previously testified that a report got abroad in the McKelvey store where she worked to the effect that she had married a man by the name of Rainey and that the company's records had at one time been changed so as to show the name "Rainey" instead of "Rickabaugh" on the record of her work, and that it was later changed back to "Rickabaugh" when it was discovered this report was just "a joke." We see nothing either erroneous or prejudicial in connection with the overruling of the single objection made to Miss Nelson's testimony. In the state of the record no error was committed by the trial court in overruling this motion of counsel for plaintiff.

We have likewise examined the testimony of Mr. G. Glen Anderson, assistant superintendent of the Strouss-Hirshberg Company where plaintiff had formerly been employed. Mr. Anderson testified that plaintiff had been absent from employment on account of illness during certain periods. Refreshing his recollection from the company's records kept under his supervision, this witness testified that of his own knowledge he knew quite definitely of the illness of Mrs. Rickabaugh. We find no prejudicial error in respect to the introduction of this testimony.

Upon the subject of the degree of care required of the common carrier in the transportation of its passengers, the court charged the jury as follows:

"Now it appears, without question, that the plaintiff was a passenger upon the street car and that the defendant is what is known in law as a common carrier. It, therefore, becomes necessary for me to de-

fine to you the duties as respects this relation of passenger and common carrier.

"The relationship of carrier and passenger is a relationship out of which arises a duty of care by the carrier toward the passenger. It is claimed by the plaintiff and denied by the defendant that there was a breach of this duty which breach of duty constituted negligence on the part of the defendant. It is claimed by the plaintiff that as a proximate result of such negligence on defendant's part plaintiff received the injury complained of in the petition. To determine this question of negligence you must be instructed regarding the duty owed by defendant to plaintiff in the relationship of carrier and passenger.

"It is the law that a high degree of care is required from a carrier toward a passenger. This does not mean the highest possible degree of care for that would possibly result in imposing upon the carrier the responsibility of an insurer and it is not the law that a common carrier is an insurer of the safety of a passenger but the measure of care required is as high a degree of care as is reasonably consistent with the means at hand for the management and operation of the carrier's street car. The rule imposes upon the carrier the duty to do everything necessary to secure the safety of its passengers reasonably consistent with the means of conveyance employed in street railway cars and the carrier cannot be heard to say that it is not liable for injuries to a passenger caused by its performances or omissions to act unless it has exercised under all the circumstances the highest degree of care and prudence in the management and operation of its cars and in the instrumentalities employed by it that prudent men in like circumstances usually employ and commensurate with the hazards ordinarily to be encountered.

"When a common carrier has done all that any one

in his position could reasonably do to guard against injuries to his passengers; when the utmost care and skill which prudent men are accustomed to use under the same or similar circumstances has been exercised then the carrier's duty has been discharged.

"I say to you a passenger in a street railway car in the absence of knowledge to the contrary and acting in good faith is entitled to presume that the carrier will not be negligent in the performance of its whole duty to him or her, and he or she will not be exposed to any hazard that reasonable care and prudence could guard against. The passenger assumes such hazards as are incident to passenger transportation upon the carrier's car only when the car is properly managed.

"The law, likewise, imposes a duty upon the passenger and that duty is to use ordinary care. Ordinary care is that kind and degree of care that an ordinarily prudent and careful person would ordinarily and customarily use under the same or similar circumstances, so that negligence, ordinary negligence—and I use these words as applying to the passenger only—would mean the failure to exercise that kind and degree of care that an ordinarily prudent and careful person ordinarily and customarily uses under the same or similar circumstances. In other words, the duty of care to be exercised by the passenger is as I have defined it to you, ordinary care; the duty of care to be exercised by the carrier is the highest degree of care commensurate with the practicable operation of the line and such as is used by prudent men under the same or similar circumstances."

By all this quoted language of the court, just what would the jury understand was the degree of care devolving upon the carrier in this case? Can it be said that this charge, considered as a whole, gave to the jury the proper definition as to the care applicable

upon the part of the carrier? In one place the court says:

"It is the law that a high degree of care is required from a carrier toward a passenger."

Then the court qualifies this "high degree" of care by stating:

"This does not mean the highest possible degree of care * * * but the measure of care required is as high a degree of care as is reasonably consistent with the means at hand for the management and operation of the carrier's street car."

It is probable that the jury might reasonably understand from this language that the company was only required to use as high a degree of care as was reasonably consistent with whatever means the company had at hand for the operation of its street car, regardless of whether the street car company had permitted the steps of the street car to become icy and slippery. Did the jury understand from this charge that the street car company had any duty to see that ice and snow were removed from the steps or were inspected within any reasonable time so as to remove the ice and snow therefrom?

In the next sentence of the charge the court told the jury that "the rule imposes upon the carrier the duty to do everything necessary to secure the safety of its passengers reasonably consistent with the means of conveyance employed in street railway cars * * *." Is this an instruction to the jury that the company was only required to exercise reasonable care to secure the safety of its passengers? Again the court said to the jury:

"The carrier can not be heard to say that it is not liable for injuries to a passenger caused by its performances or omissions to act unless it has exercised under all the circumstances the highest degree of care and prudence in the management and operation of its

cars and in the instrumentalities employed by it that prudent men in like circumstances usually employ and commensurate with the hazards ordinarily to be encountered.''

We think this last quoted language of the court correctly states the law applicable, but the court was apparently not content with this correct statement of the law and proceeded to give further inconsistent instructions to the jury which in one instance seems to imply that reasonable care shall be exercised by the carrier to guard against injuries to its passengers, and in the next sentence says that it is the utmost care and skill which prudent men are accustomed to use under the same or similar circumstances, and finally the court tells the jury that ''the duty of care to be exercised by the carrier is the highest degree of care commensurate with the practicable operation of the line and such as is used by prudent men under the same or similar circumstances.'' Thus we see that the jury is told that it is the duty of the carrier to use ''a high degree of care * * * as high a degree of care as is reasonably consistent with the means at hand, * * * the utmost care and skill which prudent men are accustomed to use under the same or similar circumstances, * * * the highest degree of care commensurate with the practicable operation of the line,'' and ''such as is used by prudent men under the same or similar circumstances,'' and again such as ''reasonably consistent with the means of conveyance employed in street railway cars.''

The court, as a part of this long charge and at about the middle thereof, correctly stated to the jury that the carrier must exercise under all the circumstances ''the highest degree of care and prudence in the management and operation of its cars and in the instrumentalities employed by it that prudent men in

like circumstances *usually* employ and commensurate with the hazards ordinarily to be encountered."

It is urged by counsel for plaintiff that the court should not have made reference in its charge to the care *usually* employed by carriers, but should have stated to the jury that "it was the care *required* to be used" by carriers. We do not agree with this complaint for the reason that the jury would not have known what was required of carriers unless they were instructed by the court. We do think that the charge as a whole was confusing, but we are not inclined to criticize the court for the reason that the court took this charge almost verbatim from the 1935 Edition of Weygandt's Ohio Charges. The writer of this opinion is constrained to say that it is high time that some reviewing court utter a word of warning to trial courts to the effect that it is dangerous to try to embody in a single charge all that various courts throughout the history of the state have said upon the subject of the degree of care required to be used by a carrier in the transportation of its passengers, for we find that the Supreme Court has frequently in its syllabi said that this care is a high degree; at other times the Supreme Court has seemingly approved utmost degree of care, and at other times has talked about the higher degree of care owing by a carrier. The work to which we have herein last above referred has apparently made up charges attempting to embody all that has been said by the various courts upon the subject. We suggest that the work might profitably have said to trial courts simply that the degree of care owing by a carrier to its passengers is the highest degree of care and prudence in the management and operation of its cars and the instrumentalities employed by it that prudent men in like circumstances employ, and commensurate with the hazards ordinarily to be encountered. This simple

statement would, we think, be readily understood by the jury, and they should not be confused by such long charges as were given in this case.

It is urged by counsel for defendant that under the rule stated in the case of the *Youngstown Municipal Ry. Co.* v. *Mikula,* 131 Ohio St., 17, 1 N. E. (2d), 135, it must be held that this charge was not prejudicial when construed as a whole. In the *Mikula case, supra,* the trial court had, upon eight separate occasions, charged the jury upon the subject of contributory negligence of the plaintiff; and upon three of these occasions had correctly charged that the contributory negligence of the plaintiff must have been a proximate cause of his injuries in order that such contributory negligence would defeat plaintiff's claim, and upon five occasions the court referred to contributory negligence, omitting to say that such contributory negligence must have been a proximate cause of plaintiff's injuries. It was the opinion of the majority of this court, in passing on the *Mikula case,* that the jury was not properly charged upon the subject of contributory negligence, but the Supreme Court held that, considering that charge as a whole, the jury was not misled. The basis of the Supreme Court's holding is that the *mere omission* to embody the matter of proximate cause each time that contributory negligence was referred to by the court was not prejudicially erroneous, but we think that the first paragraph of the syllabus of the *Mikula case* correctly sets forth the law applicable to the charge we now have under consideration. It is as follows:

"Where both a correct and a prejudicially incorrect instruction upon the same subject have been given to the jury and from the entire charge it is uncertain which the jury adopted and applied, a judgment based upon the verdict in such case should be reversed."

In the charge now under consideration we do not

have a situation where the court merely omitted at all times to correctly state the law, but where positive conflicting statements of the law are given to the jury. We find that this charge was prejudicially erroneous.

The court charged the jury in this case that if the plaintiff was guilty of negligence which directly and proximately contributed to her own injury she could not recover, and it is urged that the court erred in this respect because contributory negligence was not plead by the defendant and it is claimed that the issue of contributory negligence did not arise from the evidence. It needs no statement from this court to establish the law to the effect that it is error in the trial court to charge upon the subject of contributory negligence if this issue is raised neither by the pleadings nor by the evidence.

The answer of the defendant in this case did not allege contributory negligence and thus the issue is not raised by the pleadings even though the third amended petition of the plaintiff avers that plaintiff's injuries were "solely" caused by the negligence of the defendant and this averment is denied in the answer.

Did the issue of contributory negligence arise from the evidence in this case so as to warrant the court in charging the jury thereon? We think this issue clearly arose from the evidence as indicated by the following quoted excerpts from the testimony of plaintiff:

"Q. Can you tell what kind of a day it was? A. Very bad, cold and snowy.

"Q. What was the condition of the sidewalks and highways generally that morning? A. Everything was icy.

"Q. Was it snowing at the time you boarded the car? A. There was some snow that morning. I couldn't say there was at the time I boarded the car, but it had been snowing.

"Q. Tell what happened as you went to get off the car? A. I took hold of the grab handles to step down. I noticed there was ice on both steps and I stepped down very carefully, and I felt my foot commence to slip and took hold of the handles and when I slipped I tried to save myself, naturally, and I twisted and fell down flat in a sitting position on the street. * * *

"Q. Then, as you came to the step there before you got off, do you say you saw the snow and ice on the step before you stepped down? A. Yes, sir, I did. * * *

"Q. And you didn't make any request of the operator to help you out? You didn't think that would be necessary? A. No.

"Q. Then, as you came to the step there before you got off, do you say you saw the snow and ice on the step before you stepped down? A. Yes, sir, I did.

"Q. Now, I wish you would tell the jury, if you will, something about what it looked like. A. It was black and dirty and packed-like, and it was more or less rigid like, as if ridges, and where I stepped down I stepped on that and slid right out. * * *

"Q. It was very slippery on the car steps, glaze of ice there? A. Yes, slippery every place. * * *

"Q. The streets generally all over the city were pretty icy, sheet of ice like? A. Yes. * * *

"Q. You were wearing regular oxfords, were you? A. I was wearing walking oxfords, yes.

"Q. Didn't have any galoshes or overshoes? A. I didn't have any galoshes or overshoes."

One of plaintiff's witnesses, Julia Sklepko, testified as follows:

"Q. By the way, did you notice what sort of foot wear Mrs. Rickabaugh had on? * * * Did she have galoshes on? A. No, oxfords, I would say, and high heeled.

"Q. A high heeled oxford? * * * About how high

would you say her heel was? A. About two and one-half inches. * * * About two and three-fourths.

"Q. She did not have any galoshes or overshoes on? A. No."

Another of plaintiff's witnesses, Grace Semple, testified as follows:

"Q. Mrs. Rickabaugh didn't have any overshoes or galoshes on? A. No.

"Q. Did you notice her foot wear? A. Yes. * * *

"Q. What was it? A. She had walking oxfords on.

"Q. Was there anything called your attention to the fact she had oxfords on that morning? A. I noticed because she did not have galoshes and I thought it was foolish.

"Q. You thought it was foolish? A. Yes. * * *

"Q. Then, what occasion did you have to notice particularly Mrs. Rickabaugh as she left the car? A. Just like I told you, I was watching her, it was a miserable icy morning and I thought how foolish for her to go out and was watching her go out. * * *

"Q. Was the street a glare of ice at Hazel and Federal? A. It was ice all over."

We find the court committed no prejudicial error in charging the jury upon the subject of contributory negligence of the plaintiff.

We are cited by counsel for plaintiff to the case of *Washington B. & A. Electric Rd. Co.* v. *Fitch,* 152 Md., 137, 136 A., 529, which is claimed to be authority for the proposition that it is not contributory negligence for a passenger to attempt to descend on a known icy street car step. The fifth paragraph of the syllabus of that case reads as follows:

"A passenger on an interurban electric train was not guilty of contributory negligence as a matter of law because she undertook to alight from a car while there was ice and snow on the steps, she using the

avenue of egress provided for her in a reasonably careful and prudent manner.''

In the opinion in that case the court says:

''Nor can it be said as a matter of law that the plaintiff was guilty of contributory negligence. She was not obliged to remain in the car indefinitely, and she was using the avenue of egress provided for her by the defendant, according to her testimony, in a reasonably careful and prudent manner.''

We do not hold that the mere fact that plaintiff descended from the street car by way of the known icy steps constituted contributory negligence as a matter of law, but it was for the jury to say whether, under all the circumstances shown by the record, the plaintiff was or was not guilty of negligence which directly and proximately contributed to her injury.

The court correctly charged the jury that ''contributory negligence may be defined to be any act or omission on the part of the plaintiff amounting to a want of ordinary care which, combining and co-operating with the negligence of the defendant, becomes a proximate cause of the injury complained of,'' and correctly charged that the burden of establishing contributory negligence as a defense rested upon the defendant ''unless the proof adduced in behalf of plaintiff is of such a character as to raise a presumption of negligence on her part, in which case plaintiff is required to produce evidence sufficient to counterbalance the evidence giving rise to the presumption, but in which case the plaintiff is entitled to the benefit of any evidence that may be produced by the defense tending to dispel the inference or presumption that has arisen, if any, against the plaintiff from plaintiff's own evidence.''

At the conclusion of the charge to the jury the court inquired as follows:

"Are there any corrections, amendments or additions that counsel desire to suggest to the court?

"Mr. Kerr: Your Honor, please—

"Court: Mr. Kerr.

"Mr. Kerr: I don't know whether I didn't understand you or did you define how long the relationship of passenger and carrier existed and what the duty of the street car company would be with respect to snow and ice tracked on the car and its duty with respect to things that it should anticipate might occur as likely to result from the weather conditions and the precautions they should take concerning the same. Then Your Honor too said, as I understood you, that a passenger assumes such of those risks that he may assume when the car is not properly—he assumes them only if the car is properly managed; I don't know whether the rule goes that far or not. Your Honor also didn't give any charge as I have heard upon notice.

"Court: Members of the jury: The relationship of carrier and passenger exists from the time the passenger has boarded the car until the passenger has safely alighted from the car at his or her destination or the point at which the passenger desires to alight. After the passenger has safely alighted from the car and is upon the street then there exists at that time no relationship of passenger and carrier. It has terminated.

"As to the other matters suggested, I think I fully covered in the charge everything that I have to say as respects them. Is there anything further, gentlemen? (No response from plaintiff.)

"Mr. Jackson: Nothing further.

"Court: Hearing nothing further from any counsel, * * * the jury of twelve may now take the case and retire in charge of the bailiff. (Jury retired.)

"Mr. Kerr: Exceptions especially to what the court

refused to charge as we requested and general exception to what he did charge."

It is claimed that the court erred in not charging the jury upon matters suggested to the court by counsel for the plaintiff as indicated in the above quoted language. An examination of the charge discloses that the court called to the attention of the jury the fact that:

"It is claimed by the plaintiff that the defendant was negligent in certain respects; first, in and about carelessly and negligently causing and permitting ice and snow to accumulate, congeal and remain upon the steps leading from said car; second, in negligently permitting ice and snow to become solidly packed upon and firmly attached to said steps in uneven and ridge-like formation; third, in and about failing and neglecting to use the highest degree of care to remove said ice and snow from the steps; fourth, in negligently failing and neglecting to warn passengers * * *; next, in failing and neglecting to inspect or cause said steps to be inspected at frequent intervals for the purpose of ascertaining the condition and safeness thereof. Now, whether or not the defendant was negligent as respects any one or more of these specifications are issues of fact for the jury under all the evidence in the case and under the law as I give you the law."

We think the charge had already covered the matters to which counsel for plaintiff requested the court to charge, and we find no prejudicial error in this respect.

Further complaint is made by counsel for the plaintiff because the court struck from a certain hospital record, offered by plaintiff, a letter of plaintiff which had become attached thereto and which was very evidently no part of any record made by the hospital, but was merely a self-serving declaration of the plain-

tiff herself made at a time when plaintiff was not an inmate of the hospital. When the hospital record was first admitted in evidence, it was not observed that this letter was attached thereto, and later the court struck the letter from the hospital record and did not permit the same to go to the jury. There was no error in this.

Dr. Richard Pettigrew was called as a witness for the plaintiff and, after qualifying as a physician, testified to an examination made by him of plaintiff at the request of plaintiff's counsel and in the office of plaintiff's counsel in Youngstown, the doctor having come from Cleveland to Youngstown for that purpose. After having testified that he did not examine the plaintiff except upon the one occasion, he was asked upon cross-examination the following questions:

"Q. So far as she is concerned you saw her just once? A. Yes.

"Q. And you saw her in Mr. Phillips' office, and the examination was made for the purpose of testifying? A. No, at that time I rendered a report in this case and I presumed the report was for the purpose of bringing about adjustment or settlement of the case. I knew nothing about testifying until yesterday.

"Q. Well, it was for the purpose of examination and not for treatment? A. Yes."

In the closing argument of counsel for the plaintiff, counsel for plaintiff called to the attention of the jury that part of Dr. Pettigrew's testimony wherein he said: "No, sir, I came here to examine this woman for the purpose of what I thought was to effect a settlement." On motion of counsel for the defendant the court instructed the jury as follows:

"Members of the jury, the matter referred to has no place in the law suit, absolutely no place; put it out of your minds entirely as if you never heard it. You are here to decide this lawsuit on the issues of

fact which the court will submit to you and by applying the law which I submit to you to the evidence which you have heard in the case you thus spell out the verdict in the case according to law and the facts. So that particular line of argument is not admitted; it is stricken out. Proceed.''

The witness had merely volunteered a presumption on his part which in our opinion had no proper place in the case. The inquiry of counsel for defendant properly developed the fact that Dr. Pettigrew was not called to treat the plaintiff. We see no error in the court instructing the jury not to consider the statement of Dr. Pettigrew that he presumed he was making a report for the purpose of bringing about an adjustment or settlement of the case. We fail to see how the inquiry of counsel for the defendant in any way attempted to discredit the testimony of Dr. Pettigrew as to the examination and report made by him.

We have considered all of the errors assigned on behalf of the plaintiff and, as hereinbefore stated, find that the court erred in admitting incompetent evidence in the form of the ''shop records'' of the defendant company, and erred in the charge to the jury upon the degree of care required to be exercised by the defendant in carrying its passenger. But we are not able to reverse this case because of these errors for the reason that no interrogatories were propounded to the jury and we are unable to determine whether the jury found that the defendant was not guilty of any negligence or whether the jury found that the plaintiff herself was guilty of contributory negligence which was a direct and proximate cause of her injuries, and the ''two-issue rule'' comes into application in this case, the court having properly charged the jury upon the subject of contributory negligence of the plaintiff.

There is still another and at least equally important

reason why the judgment of the Common Pleas Court can not be reversed. We call attention to the fact that by its answer the defendant made the issue that plaintiff had not fallen from the street car step but had fallen upon the icy pavement after she had safely alighted from the street car, and there was evidence in the record from which the jury may have arrived at the conclusion that plaintiff did not fall from the street car step but fell upon the icy street after she had alighted from the street car. We note that the operator of the street car, upon observing that plaintiff had fallen upon the street, got out and assisted plaintiff to arise and asked for her name, and plaintiff refused to give her name to the operator of the street car.

The testimony of John R. Ralston, a witness for the defendant, was as follows:

"Q. Now then, when the car came down here to the stop at Hazel and Federal streets, did you notice some people leave the car at that point? A. Yes, sir.

"Q. One of those persons was a woman? A. Yes.

"Q. I want you to go ahead. Did you see someone fall at Hazel and Federal streets? A. I saw a woman fall.

"Q. Go ahead and tell the court and jury just exactly what you saw. A. As he opened the door there were probably two or three people going out and one woman went down the steps and her feet went from under her after she got on the sidewalk or on the street.

"Q. Could you see that she had reached the street? A. I saw both feet go down. She made the last step down the same as the other one."

This witness testified that he left the street car two blocks distant from the point where plaintiff alighted therefrom, and as he alighted therefrom he examined

the street car steps and that there was no ice or snow thereon.

The defendant offered as a witness in its behalf the operator of the street car, Mr. David R. Jones. We quote a part of the testimony of Mr. Jones:

"Q. Now, let's confine ourselves to the lady who fell there, did you see her when she came up to get off the car? A. I didn't pay much attention when she got off. I seen her step off the car.

"Q. Go ahead and tell the jury what happened to that lady at the corner of Hazel and Federal streets. A. She got off the car at the corner of Hazel and Federal and she made a second step. As she cleared the step, I judge three and a half feet away from the step, then her feet went from under her and she fell on her side. Then I went after her. She walked to the Grant store on the southwest corner of Federal. She was standing on the sidewalk and I walked down to her and asked her, 'Lady, are you hurt?' She said, 'No, I am all right.' I said, 'Will you please give me your name and address?' It is required of us when anything happens near these cars, we are supposed to make a report of it. She said, 'No, no, never mind, I won't give you my name.' She said, 'I am all right.' In the meantime we walked back and I got on my car and she walked across the street north on Federal. * * *

"Q. Did you see this lady as she was sitting on the street after she had fallen? A. She just went down on her side. She didn't fall hard, it seems to me. * * *

"Q. Mr. Jones, after you got out of the car at the corner of Hazel and Federal streets, did you have an opportunity to see the street around there; that is, on the ground, to notice what the condition of it was there as to being icy or what? A. At this particular place the wind swept the snow away. There was no

snow on the top of the ice. There was a sheet of ice. The wind would carry the snow—it was so high.

"Q. At that time, Mr. Jones, at the stop there at Hazel and Federal, did you have occasion to and did you notice the step of the street car at that time? A. The step was clean."

On cross-examination Mr. Jones stated that he remembered that he had taken a broom and swept the step off the last thing he did before he closed the car doors at the end of the line on the run on which this accident later happened. In his cross-examination the witness stated that Mrs. Rickabaugh was between three and three and one-half feet away from the car when she fell. As stated before, the plaintiff had previously testified that after she fell the motorman "asked for my name and I told him I had better not."

We do not find in the record any denial by the plaintiff that she told the motorman that she was not hurt.

Perhaps it is not strictly correct to say there are three issues in this case, since under the general denial defendant put in issue both the claim of negligence on its part and the question whether plaintiff received her injuries before or after the relationship of carrier and passenger had terminated. Proof tending to show the relationship of carrier and passenger had terminated before plaintiff fell was admissible under the general denial and the affirmative allegations of the answer to that effect were not required. But conceding these questions as one issue under the general denial, the further issue of plaintiff's contributory negligence arose from the evidence, and the case is brought within the two-issue rule first announced in the case of *Sites* v. *Haverstick,* 23 Ohio St., 626, and recently approved in *Knisely* v. *Community Traction Co.,* 125 Ohio St., 131, 180 N. E., 654.

A general verdict was rendered by the jury in favor of the defendant.

There being no prejudicial error in the record except upon the issue of the negligence of the defendant, the judgment of the Common Pleas Court must be and the same is affirmed.

*Judgment affirmed.*

CARTER, P. J., and ROBERTS, J., concur.